FOUR "S" ALLIANCE, INC., *et al.*, Plaintiffs-Appellees, *v.* AMERICAN NATIONAL BANK & TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellants.

First District (3rd Division)    No. 81-600

Opinion filed February 24, 1982.

Churchill, Baumgartner & Phillips, Ltd., of Grayslake, for appellants.

Wayne B. Giampietro, of DeJong, Poltrock & Giampietro, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

The trial court found defendants to be liable to plaintiffs for deceit and misrepresentation, and it awarded judgment to plaintiffs in the amount of $20,663.87. The trial court also dismissed defendants' counterclaim for rent. On appeal defendants contend that the judgment was beyond the scope of the pleadings; that the evidence revealed the plaintiffs did not rely on any misrepresentation; and that punitive damages were improperly awarded. Defendants also maintain that plaintiffs were liable for rent. The facts reflected by the findings of the trial judge are as follows.

William and Peter Anest are owners of S & S Petroleum Company and A & A Oil Company. The Anests had advertised for the sublease or assignment of a leasehold interest held by S & S in the subject gas station-car wash. Responding to the ad, Sobieski spoke to William Anest, who stated that the gas station's records for the preceding year reflected aver-

age sales of 40,000 to 50,000 gallons of gasoline per month. Sobieski and Maciejewski contacted an attorney, and the three men met with Anest to negotiate a lease of the gas station. At the meeting, Anest again quoted the preceding year's sales and assured plaintiffs that records would be produced to corroborate these figures. Plaintiffs' counsel compiled a draft of a lease providing a term of five years, and he sent a copy to Anest. Anest then arranged to meet alone with Sobieski and Maciejewski on April 26, 1978. He gave them copies of the necessary documents including the proposed lease which he had altered, and he requested that the documents be signed at that meeting. Plaintiffs replied that they wanted their counsel's approval along with the written statements of the prior gasoline sales before entering a contract. Anest agreed that plaintiffs could take over immediate possession and operation of the station, and that the long-term lease would be subject to these conditions. As a result, plaintiffs signed the documents forthwith and paid a one-month rental security deposit, a pro-rated rental for the last two days of April, and rent for the month of May. They also paid $9,000 for inventory and $5,000 for initial reimbursement to Anest for expenditures in rehabilitating equipment. The equipment reimbursements thereafter were to be paid in monthly installments of $500 per month.

In mid-May, plaintiffs observed that they were selling only one-third the amount of gasoline represented by Anest as having been sold. They contacted Anest, and he assured them that the sales records would be sent to their attorney immediately. Plaintiffs paid the June rent. The statements were ultimately delivered to plaintiffs the end of June by Robert Gierke, Anest's employee. Contrary to Anest's representations, the records reflected sales of between 10,000 to 20,000 gallons per month. Plaintiffs' counsel thereafter contacted Anest for a meeting in order to draft a different and final lease agreement. The meeting ended abruptly when a dispute arose regarding Anest's representations.

At the end of June, plaintiff stopped ordering gas supplies from defendants, but continued to sell the on-hand supply through July. Plaintiffs also refused to pay the July rent. Negotiations concluded the end of July when Anest solicited a meeting alone with plaintiffs. Anest suggested a reduction in rent and plaintiffs refused. Anest told them that he knew a prospective buyer for the gas station and that perhaps plaintiffs should bring out records reflecting the business as profitable. Plaintiffs refused, and Anest handed them a five-day eviction notice. Plaintiffs locked up the station the end of July.

Plaintiffs' counsel demanded of defendants the return of the money expended by plaintiffs. Plaintiffs offered to relinquish the gas station upon payment of the requested money. Defendants refused. Although

plaintiffs did not operate the station, they did not return the keys to defendants until 1979.

Anest testified that he never represented any figure pertaining to gasoline sales but might have referred plaintiffs to Gierke who had managed the subject business the preceding year. Gierke testified that on April 26, 1978, immediately after plaintiffs signed the documents but before they took possession, he told plaintiffs that gasoline sales had averaged 10,000 to 20,000 gallons per month. During their case in chief, plaintiffs testified that Gierke arrived late at the April 26 meeting, that Anest instructed Gierke to deliver the written statements to plaintiffs "immediately," and that Gierke looked surprised but responded only that he would.

The trial court specifically found that Anest's testimony was incredible. It also found that Anest had knowingly misrepresented the average sales in order to induce plaintiffs to lease the premises. The court awarded $5,400 in damages for the three-month period of the tenancy based on the difference between what plaintiffs actually received from gas sales and what they would have received had the representations been true. The court awarded $263.87 for improvements made by plaintiffs, and $15,000 in punitive damages. In denying defendants' counterclaim for rent, the court found that plaintiffs had legally tendered the premises in timely manner.

■■ Defendants first maintain that the judgment entered was beyond the scope of the pleadings. They argue that plaintiffs' complaint merely states an action for rescission of a contract which was subject to a condition precedent, proof of sales of 40,000 gallons per month, which never occurred, and that plaintiffs were limited to such proof and such damages. We do not agree. The complaint clearly pleads facts establishing two potential contracts. The first contract alleged is the five-year lease which was subject to the condition precedent of an attorney's approval, and the written statements of gas sales of 40,000 gallons per month. It was further alleged that these conditions never occurred. Hence, these are not allegations supporting rescission of a contract. Instead they support a related claim for restitution of moneys expended in anticipation of a duty of performance which never arose. (See Restatement (Second) of Contracts §377, at 224 (1981).) The second contract alleged is that of the month-to-month tenancy for the months of May, June and July. It is charged that plaintiffs entered into this agreement not in reliance on the written statements, but in reliance upon the oral quotations of gasoline sales by Anest. The complaint stated that these oral quotations were knowingly false. These recitals clearly allege a claim for damages for fraudulent misrepresentation. (See *Mother Earth, Ltd. v. Strawberry Camel, Ltd.* (1979), 72

Ill. App. 3d 37, 390 N.E.2d 393.) We believe the relief awarded is wholly in accord with the theories pleaded and the proof adduced at trial. A benefit-of-the-bargain formula for damages is proper in an action for fraud. (*Drew v. Beall* (1871), 62 Ill. 164; *Ginsburg v. Bartlett* (1931), 262 Ill. App. 14.) In the present case, this is the formula applied by the trial court in allowing damages on the month-to-month tenancy claim. The court awarded the profit difference for the gas actually sold during the three months and the volume of sales which had been represented orally.

■■ We do not believe that delivery to plaintiffs in late June of the true statements regarding the volume of gasoline sales reduced by one month the period for which plaintiffs are entitled to recover. Defendants correctly state the principle that one cannot, as a matter of law, be said to rely on a misrepresentation, once the falsity of the statement is made known. (*Knightsbridge Realty Partners, Ltd-75 v. Pace* (1981), 101 Ill. App. 3d 49, 427 N.E.2d 815.) The record reveals, however, that the gas which was sold in July had been purchased prior to plaintiffs' receipt of the statements and that after discovery of the fraud at the end of June plaintiffs ceased purchasing supplies from defendants. Under these facts, plaintiffs were entitled to mitigate their damages by disposal of the on-hand gas supply in July. (5 Corbin on Contracts §1044, at 275 (1964).) They are entitled to recover for the entire three-month period of sales.

Defendants next maintain that their evidence, presented through Gierke, compels the conclusion that plaintiffs, as a matter of law, did not rely on the misrepresentation. As we have noted, Gierke testified that before plaintiffs took possession he told Sobieski the actual sales figures. Defendants insist that Gierke's testimony was not contradicted or impeached and must be accepted. The record discloses, however, that during their case in chief, Sobieski and Maciejewski testified that Gierke merely "looked surprised" when Anest instructed him to deliver the records to plaintiffs and that he agreed to do so. The clear import of this testimony is that Gierke was not ready with the figures. The trial court was not required to accept Gierke's testimony.

■■ Defendants also contend that the trial court erred in awarding punitive damages to plaintiffs. We will not reverse a trial court's decision to award punitive damages absent an abuse of discretion. (*Queen v. Behm* (1978), 58 Ill. App. 3d 253, 373 N.E.2d 1382.) Punitive damages are penal in nature and are not favored in the law. (*Pierce v. DeJong* (1973), 13 Ill. App. 3d 889, 300 N.E.2d 782.) Yet, where a party knowingly induces another to contract by the making of "willful, wanton, and grossly fraudulent misrepresentations" punitive damages may be charged. (*Laughlin v. Hopkinson* (1920), 292 Ill. 80, 89, 126 N.E. 591. See also *Gass v. Gamble-Skogmo, Inc.* (7th Cir. 1966), 357 F.2d 215.) In *Laughlin,* the court allowed punitive damages where defendant falsely and knowingly misrep-

resented the past sales of a retail clothing store in order to induce plaintiff to purchase an interest in the business.

■■ The trial court here properly awarded punitive damages. The court found that Anest knowingly misrepresented the past sales of gasoline to be 40,000 to 50,000 gallons per month when they had in fact been 10,000 to 20,000 gallons per month. These misrepresentations were repeated at various stages of the negotiations and were clearly material to plaintiffs' decision to enter the month-to-month tenancy. Each time plaintiffs requested the records Anest assured them the records would be forthcoming immediately. The trial court did not abuse its discretion in granting punitive damages.

■■ We briefly address plaintiffs' request that this court include in the damage award an additional $6,500 representing the $5,000 initial reimbursement for equipment repairs and three monthly payments of $500 for reimbursements. Plaintiffs maintain that since the long term lease obligation never came into being, they are entitled to recover those sums expended in anticipation of that lease. Plaintiffs correctly state the general rule that where a duty of performance does not arise due to the nonoccurrence of a condition then a party is entitled to restitution of moneys expended in reliance on or part performance of that duty. (See Restatement (Second) of Contracts §377, at 224 (1981).) On the other hand, plaintiffs are not entitled to restitution for moneys paid in order to enter the month-to-month tenancy if upon discovery of the misrepresentation they elect to affirm and not rescind that contract and sue for damages as they have done here. (*Allen v. Henn* (1902), 197 Ill. 486, 64 N.E. 250.) Since it is unclear whether the requested $6,500 was money expended to enter the month-to-month tenancy, or whether it was strictly intended to be dependent on the long-term lease, plaintiffs have failed to meet their burden of showing an entitlement to this money. The trial court's award of damages was proper and adequate.

■■ We finally consider defendants' contention that the trial court erred in dismissing their counterclaim for rent. Defendants argue that the five-year lease was subject to a condition precedent which never occurred. They thus maintain that plaintiffs' retention of the keys until 1979 constitutes a retention of possession of the premises as holdover tenants. Anest served a five-day eviction notice on plaintiffs in the latter part of July and plaintiffs ceased all operations at the station a few days later, boarding up the premises. In all significant respects, plaintiffs recognized the termination of their tenancy and relinquished possession. Under the circumstances, the retention of the keys did not constitute conclusive evidence of a constructive possession. Indeed, Gierke testified that he was able to gain access and had visited the premises. The trial court was justified in denying the counterclaim for rent.

642

For the reasons stated the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P. J., and McGILLICUDDY, J., concur.