JEANINE TOBIN, Plaintiff-Appellant, v. LESTER McCLURE *et al.*, d/b/a McClure Apartments, Defendants-Appellees.

Third District   No. 3—85—0548

Opinion filed June 5, 1986.

34

Jeanine F. Tobin, of Chicago, for appellant, *pro se.*

No brief filed for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiff appeals from a judgment of the circuit court of Kankakee County which awarded her $88 of her $200 security deposit. There are three issues presented for review: (1) whether the trial court's judgment was against the manifest weight of the evidence; (2) whether the plaintiff was entitled to punitive damages and attorney fees under section 1 of "An Act in relation to security deposits ***" (Ill. Rev. Stat. 1983, ch. 80, par. 101): and (3) whether the 10 unit or more qualification in the statute is an unconstitutional qualification in an otherwise constitutional statute. The defendants-appellees have not filed a brief.

The defendants, Mr. and Mrs. Lester McClure and Stephen Mc-Clure, d/b/a McClure Apartments, owned a four-unit apartment building at 312½ South Osborn, Kankakee. They own another four-unit apartment building across the street and rental property at 518 East Maple and South Lincoln, Kankakee. The plaintiff, Jeanine Tobin, leased a unit at 312½ South Osborn pursuant to an oral month-to-month lease. The monthly rent was $200 and plaintiff paid a security deposit in the amount of $200. On June 7, 1985, plaintiff filed a *pro se* complaint against the defendants to recover her security deposit. The complaint alleged that the plaintiff notified defendants of the termination of her tenancy on March 1 by a letter which stated her intention to vacate on March 31. The report of proceedings filed by the plaintiff indicates she testified that she vacated the apartment and left it in good condition, minus normal wear and tear. The plaintiff further testified that on three separate occasions, on April 1, 5, and 6, Mrs. Mc-Clure told her the security deposit would be returned.

Don Lesperance, a friend of the plaintiff, corroborated the plaintiff's testimony. He testified that he helped her move out and that the apartment was left in good condition. He verified the plaintiff's testimony that he heard Mrs. McClure tell the plaintiff she would mail the deposit.

Mrs. McClure testified to numerous nail holes left in the walls of the apartment. She also stated the holes had been spackled by the plaintiff and that prior to leaving the plaintiff had requested some of the defendant's paint in order to touch them up.

Mr. Reguse testified for the defense. He said he had been contacted by the defendants one or two weeks prior to the trial to look at the apartment and give an estimate of what it would cost to repaint. Reguse testified to finding a number of spackled areas on the walls and that it would take him 14 hours to repaint all the rooms at a rate of $10 an hour. On cross-examination, he said the walls could not be

touched up and that the whole apartment needed repainting, along with the window trim. He admitted to not noticing the window trim was varnished wood.

The trial judge found there was evidence that the walls needed repainting and subtracted $112, which was the painter's discounted estimate, from the security deposit and awarded the plaintiff $88 plus court costs.

■ After reviewing the record, we find the judgment below was against the manifest weight of the evidence. The defendants were aware of the nail holes before the plaintiff vacated and nevertheless indicated that she would receive her entire security deposit. There was no evidence adduced which showed the plaintiff was responsible for any damage other than normal wear and tear. The nail holes in this case constituted normal wear and tear and should not have been charged against plaintiff's security deposit.

The plaintiff further contends that she is entitled to punitive damages and attorney fees by virtue of the following statute:

"A lessor of residential real property, containing 10 or more units, who has received a security deposit from a lessee to secure the payment of rent or to compensate for damage to the leased property may not withhold any part of that deposit as compensation for property damage unless he has, within 30 days of the date that the lessee vacated the premises, furnished to the lessee, delivered in person or by mail directed to his last known address, an itemized statement of the damage allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching the paid receipts, or copies thereof, for the repair or replacement. If estimated cost if given, the lessor shall furnish the lessee with paid receipts, or copies thereof, within 30 days from the date the statement showing estimated cost was furnished to the lessee, as required by this Section. If no such statement and receipts, or copies thereof, are furnished to the lessee as required by this Section, the lessor shall return the security deposit in full within 45 days of the date that the lessee vacated the premises.

Upon a finding by a circuit court that a lessor has refused to supply the itemized statement required by this Section, or has supplied such statement in bad faith, and has failed or refused to return the amount of the security deposit due within the time limits provided, the lessor shall be liable for an amount equal to twice the amount of the security deposit due, together

with court costs and reasonable attorney's fees." Ill. Rev. Stat. 1983, ch. 80, par. 101.

The plaintiff lived in a four-unit apartment building. She argues the statute, though inapplicable by its language, should be liberally construed so as to either ignore, delete or redefine the language limiting its application to property containing 10 or more units and permit it to be enforced in this case against a lessor of residential real property who *in the aggregate* owns 10 or more units.

■ We choose not to rewrite the statute. The intent of the legislature is clear. A "unit" of residential real property, while not defined by the statute, clearly refers to an identifiable living space within a larger structure containing one or more such spaces. Where a parcel of residential real property is in the form of an apartment complex or contains other multiple, related structures, the number of units may be aggregated. (*Rushton v. O'Malley* (1980), 89 Ill. App. 3d 103, 411 N.E.2d 528.) However, there is nothing in the statute to suggest that the *Rushton* rationale should extend to a landlord who owns several unrelated structures which, in the aggregate, contain 10 or more units.

Plaintiff also issues a constitutional challenge. She argues that there is no reason to distinguish between large and small landlords in providing protection for security deposits. Thus, it is argued, the State and Federal equal protection clauses are violated.

■ We note initially that plaintiff has standing to make this claim. An individual not benefitted by an allegedly underinclusive classification may challenge their exclusion from the benefitted class. 1 J. Nowak, R. Rotunda and J. Young, *Treatise on Constitutional Law* sec. 2.13(f)(5) (1986).

■ As the classification here draws upon no inherently suspect distinctions and no fundamental rights are involved, the statute carries with it a strong presumption of constitutionality and may be invalidated only if it bears no rational relationship to a legitimate state interest. (*City of New Orleans v. Dukes* (1976), 427 U.S. 297, 49 L. Ed. 2d 511, 96 S. Ct. 2513.) Plaintiff argues that there is no rational basis for drawing the line of protection at residential real property containing 10 or more units. We disagree. The legislation in question imposes a substantial penalty on a landlord who does not comply with the precise requirements of the law. A rational legislature could surely conclude that this would be too dear a price to pay for the small landlord who may not have the administrative machinery of a larger property owner. Moreover, the harm caused by the dilatory large landowner could substantially exceed that caused by the isolated

small landlord. Consequently, although we might not agree with the exclusion of small landlords from this statute, it was within the legitimate realm of the legislation to draw the line as it did.

Accordingly, we modify the judgment of the circuit court of Kankakee County. Plaintiff shall have judgment for $200 plus costs. The remainder of the judgment is affirmed.

Affirmed as modified.

STOUDER and WOMBACHER, JJ., concur.