TERRI MEYER, Plaintiff and Counterdefendant-Appellee, v. SUSAN COHEN, d/b/a 1415 North Astor Street Building, Defendant and Counterplaintiff-Appellant.

First District (2nd Division)  No. 1—91—2572

Opinion filed May 18, 1993.

James J. Graney, of Aurora, for appellant.

Katz, Randall & Weinberg, of Chicago (Pamela J. Leichtling, of counsel), for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant-counterplaintiff Susan Cohen owns and operates an apartment complex, located at 1415 North Astor Street in Chicago, which contains eight units. When plaintiff-counterdefendant Terri

Meyer leased one of the units on July 15, 1989, Cohen was also residing in one of the apartments, Cohen's son Curtiss was living in a third unit, another tenant was leasing a fourth apartment, and a fifth unit was rendered temporarily uninhabitable due to fire damage; the three remaining units were vacant at that time.

The lease between Meyer and Cohen was for a one-year period beginning August 1, 1989; the rent was to be $2,415 per month, and required a security deposit in the amount of $4,800 which Meyer complied with. Furthermore, paragraph 3 of the lease provided that the lessee was required to leave the premises in substantially the same condition as that in which she found it.

On March 14, 1990, $4^1/2$ months before the lease was to expire, Meyer hand-delivered a letter to Cohen in which she informed her that she had accepted employment in another State and that she would therefore "be vacating" her apartment on March 16. The letter also stated that she had enlisted a real estate broker in a "ferven[t]" attempt to find a new tenant. Cohen stated that Meyer reassured her on March 16 that she had in fact retained the services of a broker, and therefore, Cohen should "[not] worry, the apartment will be rented."

On March 21, Cohen received a letter from Meyer's attorney, Bernard Katz, dated March 14, which informed her that Meyer was terminating the lease effective March 16, for the reason that Cohen had violated section 5—12—170 of the City of Chicago Residential and Landlord Tenant Ordinance (Chicago Municipal Code § 5—12—170 (1990)) (ordinance) by not attaching a summary of the ordinance to the lease; the letter also demanded that Cohen return her security deposit. Cohen thereafter received an identical letter from Katz, the only difference being that the subsequent letter stated that the lease would be terminated as of March 23 instead of March 16. Cohen responded to the second letter, asking for a clarification from Katz and also informing him that the lease was still in effect, that there remained an outstanding rent balance, and that she had not yet received the keys to Meyer's apartment as required by the lease.

In response to her letter, Cohen received on April 2 a third letter from Katz, dated March 28, which reiterated Meyer's intent to terminate the lease. The correspondence stated that "in the event that there is any confusion with regard to the effective date of the termination of the Lease, the Lease is terminated as of March 31, 1990." Although the letter also stated that the keys to Meyer's apartment were enclosed, they were not included; Cohen did not receive them until April 6, in a subsequent letter dated April 4.

On May 1, Cohen sent a letter to Katz which listed generally the

property damage to the unit occupied by Meyer, the cost of which she intended to deduct from Meyer's security deposit; she also indicated in her letter that she felt the lease was still in effect until the expiration date of July 31, 1990. The itemized list of damages, also required by section 5—12—080(d) of the ordinance, however, was not sent to Katz until May 4. The May 4 correspondence stated that the total amount of property damage to the unit was $6,390, and it also informed Katz that Meyer would be held responsible for the rent for the months of April and May.

Meyer responded by filing a complaint in circuit court on May 16, 1990, which prayed for damages twice her $4,800 security deposit, plus interest, and attorney fees for Cohen's failure to return her security deposit within 45 days after Meyer vacated the premises as required by section 5—12—080(d) of the ordinance. (Chicago Municipal Code § 5—12—080(d) (1990).) Cohen denied the allegations of the complaint in her answer and counterclaimed for $6,390, plus attorney fees and costs, for the property damage allegedly caused to the apartment by Meyer.

On November, 20, 1990, Judge Carlson D. Klitz granted Meyer's motion for summary judgment on both her original complaint and the counterclaim, entered judgment in her favor in the amount of $9,600 plus 5% interest, and awarded her $6,484.40 in attorney fees. However, after considering Cohen's motion to reconsider, Judge Klitz vacated the summary judgment on her counterclaim and set that cause for trial. After a bench trial on the counterclaim, Judge Thomas Brownfield entered judgment in favor of Cohen in the amount of $2,500; he refused, however, to award attorney fees to Cohen, having found that she was not entitled to such relief under the ordinance.

Cohen thereafter filed a timely notice of appeal, challenging Judge Klitz's grant of summary judgment on Meyer's complaint, his award of attorney fees to Meyer, and Judge Brownfield's refusal to grant her attorney fees after finding in her favor on the counterclaim.

I

Cohen first asserts that Judge Klitz improperly granted summary judgment in favor of Meyer for the reason that the ordinance does not apply to the lease between the parties inasmuch as her apartment complex was an "owner-occupied building containing six units or less." (Chicago Municipal Code § 5—12—020(a) (1990).) Therefore, she contends, Meyer was not entitled to terminate the lease as a result of Cohen's failure to comply with section 5—12—170 of the ordinance,

which mandates that landlords attach a copy of the ordinance to a tenant's lease.[1]

Section 5—12—020 provides in pertinent part:

"Rental of the following dwelling units shall not be governed by this chapter ***:

(a) Dwelling units in owner-occupied buildings containing six units or less ***." (Chicago Municipal Code § 5—12—020(a) (1990).)

The ordinance further defines the term "dwelling unit" as:

"[A] structure or the part of a structure that is used as a home, residence or sleeping place by one or more persons who maintain a household, together with the common areas, land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." Chicago Municipal Code § 5—12—030(a) (1990).

Cohen argues that in order to qualify as a "dwelling unit" for purposes of the ordinance, a unit must be occupied at the time that the lease is signed for the reason that the phrase "*is used* as a home, residence, or sleeping place" (emphasis added) means that the city council intended that a unit must actually, and not possibly, be occupied at the time the rental agreement is signed. Consequently, she maintains, the provisions of the ordinance do not apply to her because only four of the seven available units were inhabited at the time Meyer's lease was signed. Meyer responds that a "dwelling unit" simply means the number of units *available* for rent in a par-

---

[1]Section 5—12—170 of the ordinance states:

"The commissioner of the department of housing shall prepare a summary of this chapter, describing the respective rights, obligations and remedies of landlords and tenants hereunder, and shall make such summary available for public inspection and copying. A copy of such summary shall be attached to each written rental agreement when any such agreement is initially offered to any tenant or prospective tenant by or on behalf of a landlord and whether such agreement is for a new rental or a renewal thereof. Where there is an oral agreement, the landlord shall give to the tenant a copy of the summary.

If the landlord acts in violation of this section, the tenant may terminate the rental agreement by written notice. The written notice shall specify the date of termination no later than 30 days from the date of the written notice. If a tenant in a civil legal proceeding against his landlord establishes that a violation of this section has occurred, he shall be entitled to recover $100.00 in damages [and reasonable attorney's fees]." Chicago Municipal Code § 5—12—170 (1990).

ticular building and that Cohen's proposed construction of that term is absurd.

Our supreme court has commanded that "[i]n interpreting a statute, the primary rule, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature." (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.) Our inquiry begins with the language of the statute, but it also entails consideration of "the reason and the necessity for the law, the evils to be remedied, and the objects and purposes to be obtained." (*People v. Garrett* (1990), 136 Ill. 2d 318, 329, 555 N.E.2d 353, 358.) The intent of the legislature is best evidenced by the language of the statute, and where the enactment is clear and unambiguous, we are not at liberty to depart from its plain meaning. (*Kraft*, 138 Ill. 2d at 189, 561 N.E.2d at 661.) However, statutes are also to be construed in a manner which avoids absurd or unjust results (*Croissant v. Joliet Park District* (1990), 141 Ill. 2d 449, 455, 566 N.E.2d 248, 251), and our supreme court has stated in that regard:

> "Where the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be avoided. [Citations.] A proper interpretation of a provision cannot simply be based on its language; it must be grounded on the 'nature, objects and the consequences that would result from construing it one way or the other.' [Citation.] Statutes must be construed in the most beneficial ways which their language will permit so as to prevent hardship or injustice, and to oppose prejudice to public interests. [Citation.]" *Mulligan v. Joliet Regional Port District* (1988), 123 Ill. 2d 303, 312-13, 527 N.E.2d 1264, 1269.

■ We cannot accept Cohen's construction of the term "dwelling unit" for several reasons. First, her "actual occupancy" interpretation clearly contradicts one of the city council's express purposes for enacting the ordinance: "to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units." (Emphasis added.) (Chicago Municipal Code § 5—12—010 (1990).) Were we to adopt Cohen's construction of the ordinance, landlords would be unsure whether they are subject to the provisions of the ordinance, as its applicability would depend on how many units were being occupied or how many leases were in effect at the time a lease was signed, thus controverting the express purpose of the statute, *i.e.*, to fix more clearly the rights and obligations which landlords and tenants have *vis-a-vis* each other.

Moreover, Cohen's construction would lead to the anomalous

result that a landlord would be subject to the ordinance with respect to some of his current tenants, but not others, in the same building, depending on the number of units occupied when a particular lease was signed. The city council could not have intended that tenants in the same building be afforded different rights and responsibilities under the law depending on the temporal fortuity of entering into their leases; we find such a "last in time, first in right," type of scheme to be completely incongruous with, and in derogation of, the express purpose of the ordinance.

More important, we have interpreted the Security Deposit Return Act (Ill. Rev. Stat. 1991, ch. 80, par. 101 *et seq.*), a State statute with a provision similar to those in the ordinance dealing with security deposits,[2] consistent with the construction that a "dwelling unit" means a unit that *can* be used as a home, residence or sleeping place.

---

[2]Section 1 of the Security Deposit Return Act provides:

"A lessor of residential real property, containing 5 or more units, who has received a security deposit from a lessee to secure the payment of rent or to compensate for damage to the leased property may not withhold any part of that deposit as compensation for property damage unless he has, within 30 days of the date that the lessee vacated the premises, furnished to the lessee, delivered in person or by mail directed to his last known address, an itemized statement of the damage allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching the paid receipts, or copies thereof, for the repair or replacement. If the lessor utilizes his or her own labor to repair any damage caused by the lessee, the lessor may include the reasonable cost of his or her labor to repair such damage. If estimated cost is given, the lessor shall furnish the lessee with paid receipts, or copies thereof, within 30 days from the date the statement showing estimated cost was furnished to the lessee, as required by this Section. If no such statement and receipts, or copies thereof, are furnished to the lessee as required by this Section, the lessor shall return the security deposit in full within 45 days of the date that the lessee vacated the premises.

Upon a finding by the circuit court that a lessor has refused to supply the itemized statement required by this Section, or has supplied such statement in bad faith, and has failed or refused to return the amount of the security deposit due within the time limits provided, the lessor shall be liable for an amount equal to twice the amount of the security deposit due, together with court costs and reasonable attorney's fees." Ill. Rev. Stat. 1991, ch. 80, par. 101.

(*Tobin v. McClure* (1986), 144 Ill. App. 3d 33, 493 N.E.2d 1215.) In *Tobin*, the court considered the issue of whether the number of units in separate buildings owned by a single landlord could be aggregated, thus rendering him subject to the statute which encompasses landlords who lease real property containing 10 (now five) or more units. (*Tobin*, 144 Ill. App. 3d at 37, 493 N.E.2d 1218.) In rejecting that contention, the court stated that "[a] 'unit' of residential real property, while not defined by the statute, *clearly refers to an identifiable living space within a larger structure containing one or more such spaces.*" (Emphasis added.) *Tobin*, 144 Ill. App. 3d at 37, 493 N.E.2d at 1218.

For all of these reasons, we hold that a "dwelling unit" under section 5—12—030 of the ordinance is a part of a structure which *can* be used as a home, residence or sleeping place, regardless of whether it is being employed as such at the time a lease is signed. Applying that definition to the case at bar, we find that Cohen is subject to the ordinance because, as she concedes, her building contained seven units which were available for inhabitance at the time Meyer signed her lease, and it is of no import that only three of them were occupied on that date. Consequently, we find that Meyer had the right pursuant to section 5—12—170 to terminate her lease for the reason that Cohen failed to attach a summary of the ordinance to it.

## II

Cohen next contends that Judge Klitz improperly granted summary judgment on Meyer's complaint because a genuine issue of material fact existed as to whether Cohen delivered to Meyer an itemized list of property damage to her within the time period required by section 5—12—280(d) of the ordinance.

The scope of our review of a grant of summary judgment is by now well settled. The purpose of summary judgment is to determine if there exist any genuine issues of triable fact. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) Although the use of a summary judgment procedure is encouraged as an aid in the expeditious disposition of a lawsuit (*Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871), it is a drastic means of disposing of litigation and should be used only when the right of the moving party is clear and free from doubt. *Loyola Academy v. S&S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 271, 586 N.E.2d 1211, 1215.

Because it is such a drastic measure, a motion for summary judgment should be granted only when the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue

of material fact and that, accordingly, the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005(c); *Balla v. Gambro, Inc.* (1991), 145 Ill. 2d 492, 508, 584 N.E.2d 104, 112.) A genuine issue of material fact exists not only when the facts are in dispute, but also where reasonable persons could draw different inferences from undisputed facts (*Loyola Academy*, 146 Ill. 2d at 272, 586 N.E.2d at 1215); thus, summary judgment is proper only where undisputed facts admit but one reasonable inference therefrom. *In re Estate of Ciesiolkiewicz* (1993), 243 Ill. App. 3d 506, 510; *In re Estate of Jessman* (1990), 197 Ill. App. 3d 414, 419, 554 N.E.2d 718, 720.

The burden of establishing that no genuine issues of material fact exist is on the moving party. (*Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 119, 469 N.E.2d 1379, 1387.) In determining whether the moving party has met that burden, the trial court must construe all of the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent. (*Loyola Academy*, 146 Ill. 2d at 271, 586 N.E.2d at 1215; *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.) Because we review summary judgments *de novo* (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 411 N.E.2d 229; *Myers v. Health Specialists, S.C.* (1992), 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 630),[3] we must scrutinize the facts that were before the trial court in order to determine if its grant of summary judgment was proper.

The provision of the ordinance which governs the issue of whether Cohen's itemized list of property damages was timely sent to Meyer is section 5—12—080(d), which provides:

> "The landlord shall, *within 45 days after the date that the tenant vacates the dwelling unit* \*\*\*, return to the tenant the security deposit or any balance thereof and the required interest thereon; provided, however, that the landlord may deduct from such security deposit or interest due thereon for the following:
> \*\*\*
> (2) A reasonable amount necessary to repair any damage caused

---

[3]We have recently had occasion to criticize those appellate court decisions that apply an abuse of discretion standard in reviewing appeals in summary judgment cases. *Polak v. Person* (1992), 232 Ill. App. 3d 505, 509, 597 N.E.2d 810, 812, citing *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201; *Alop v. Edgewood Valley Community Association* (1987), 154 Ill. App. 3d 482, 507 N.E.2d 19; *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 493 N.E.2d 372; *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.

to the premises by the tenant or any person under the tenant's control or on the premises with the tenant's consent, reasonable wear and tear excluded. *In case of such damage, the landlord shall deliver or mail to the last known address of the tenant within 30 days an itemized statement of the damages allegedly caused to the premises and the estimated or actual cost for repairing or replacing each item on that statement, attaching copies of the paid receipts for the repair or replacement.* If estimated cost is given, the landlord shall furnish the tenant with copies of paid receipts or a certification of actual costs of repairs of damage if the work was performed by the landlord's employees within 30 days from the date the statement showing estimated cost was furnished to the tenant." (Emphasis added.) Chicago Municipal Code § 5—12—080(d) (1990).

Both parties agree that section 5—12—080(d) required Cohen to either: (1) return to Meyer her security deposit within 45 days of the date that she vacated the premises; or (2) send to Meyer an itemized list of alleged property damage to the apartment within 30 days of that same date. (See *Mallah v. Barkauskas* (1985), 130 Ill. App. 3d 815, 818, 474 N.E.2d 886, 888 ("[T]he clear language of the [Security Deposit Return Act] allows a lessee the return of the security deposit in full within 45 days of vacating the premises if the landlord has failed to supply both the itemized statement of damages and paid receipts within the [30 day] time limit[ ]").) The parties dispute, however, the meaning of the term "vacate." Meyer asserts that a tenant vacates a dwelling unit simply when one leaves the premises and removes all belongings therefrom, while Cohen argues that tenants do not vacate their dwelling units under section 5—12—080(d) until they actually surrender possession of the leasehold.

■ We find Cohen's construction of section 5—12—080(d) to be the proper one. Were we to construe the term "vacate" as proposed by Meyer, landlords would be burdened with the herculean task of having to monitor when each of their tenants removes his belongings from the premises so that they would know that their obligation to return their security deposits had accrued. We decline to introduce such confusion into section 5—12—080(d), and, adhering to the express purpose of the ordinance—to fix the rights of landlords and tenants in the City of Chicago—we hold that the time period for returning to a tenant a security deposit or sending the tenant an itemized list of damages begins to run when the tenant surrenders possession of the leasehold.

■ Applying this rule to the case at bar, we must determine whether the trial judge properly decided that no material fact existed with regard to the question of whether Cohen's itemization was sent

within the 30-day time frame. Both parties agree that Cohen sent Meyer the itemized list on May 4, 1990. They disagree, however, as to the date on which Meyer surrendered possession of the premises. Meyer first asserts that the fact that she left the apartment on March 16 was sufficient to surrender her possession of the leasehold. Alternatively, she claims that the third letter from Katz, dated March 28, conclusively established that she was terminating the lease on March 31, thus relinquishing possession of the premises.

Cohen argues that because she received three different letters from Katz containing three different termination dates, she was not adequately informed of the date of the lease's termination. Second, she contends that even if Meyer effectively terminated the lease on March 31, Meyer retained constructive possession of the premises because she did not return the keys to the unit until April 6 in a letter dated April 4, thus rendering Cohen's mailing of the itemized list of property damage on May 4 within the 30-day time limit.

We agree with Meyer that the letter sent by Katz on March 28 sufficiently informed Cohen of her intention to terminate the lease on March 31. A notice to quit is sufficient if it adequately informs the other party of the intention to terminate the lease. (*Bismark Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 173, 415 N.E.2d 517, 521; accord *Great American Federal Savings & Loan Association v. Grivas* (1985), 137 Ill. App. 3d 267, 276, 484 N.E.2d 429, 435.) In this case, the March 28 letter unequivocally stated that "in the event that there is any confusion with regard to the effective date of the termination of the Lease, the Lease is terminated as of March 31, 1990." We find that this letter unmistakably informed Cohen that the termination date of the lease was March 31 and that she should disregard all prior letters to the contrary. Accordingly we find that the March 28 letter was a sufficient notice to quit so as to terminate the lease on March 31.

The fact that the lease agreement was terminated on March 31, however, does not end our inquiry because that occurrence alone does not necessarily mean that Meyer relinquished possession of the premises on that same day. Under Illinois law, the termination of a lease and the surrender of the premises are different events, and a tenant who remains in possession of the premises after his lease expires or is terminated becomes a tenant at sufferance. (*A.O. Smith Corp. v. Kaufman Grain Co.* (1992), 231 Ill. App. 3d 390, 398, 596 N.E.2d 1156, 1162.) At the sole option of the landlord, a tenant at sufferance may be evicted as a trespasser or treated as a holdover tenant (*A.O. Smith Corp.*, 231 Ill. App. 3d at 398, 596 N.E.2d at 1162), and when the landlord chooses the latter, a holdover tenancy, which

is governed by the same terms of the original lease, is created. (*Bismark Hotel Co.*, 92 Ill. App. 3d at 171, 415 N.E.2d at 520.) Whether a tenant has surrendered or maintained possession of the premises is generally a question of fact. See *National Bank v. S.N.H., Inc.* (1975), 32 Ill. App. 3d 110, 118, 336 N.E.2d 115, 122; *Peirce v. Conant* (1964), 47 Ill. App. 2d 294, 301, 198 N.E.2d 555, 559.

We find that a question of fact exists in this case as to when Meyer relinquished possession of the premises and, thus, whether she received the required itemization within the 30-day time period. The facts clearly establish that Cohen sent to Meyer the itemization of damages on May 4. While it is also uncontested that Meyer left the premises on March 16, she did not tender the keys to the apartment until April 4, exactly 30 days before Cohen mailed the itemized list of property damage. It was possible that Cohen believed, as she claims, that while Meyer had indicated that she intended to terminate the lease, she wanted to retain possession of the apartment on a month-to-month basis until she had finished relocating. It is also conceivable, based on the alleged previous discussion between the parties, that Meyer wanted to maintain possession of the apartment until she could find a replacement tenant for Cohen. No matter, for we find that it was for the trier of fact to determine whether Meyer relinquished possession of the apartment on March 16 when she left the premises, on March 31 when she terminated the lease, or on April 4 when she returned the keys to Cohen.

The case relied upon by Meyer, *Four "S" Alliance, Inc. v. American National Bank & Trust Co.* (1982), 104 Ill. App. 3d 636, 432 N.E.2d 1213, is unavailing. In that case, the court found that the trial court did not err in denying the defendant's counterclaim for rent on the ground that the retention of keys to the premises did not constitute constructive possession. (*Four "S" Alliance*, 104 Ill. App. 3d at 641, 432 N.E.2d at 1217-18.) The court also held that "[i]n all significant respects, plaintiffs recognized the termination of their tenancy and relinquished possessions" and thus "[u]nder the circumstances, the retention of the keys did not constitute conclusive evidence of a constructive possession." *Four "S" Alliance*, 104 Ill. App. 3d at 641, 432 N.E.2d at 1217-18.

We find that the court in *Four "S" Alliance* simply upheld the trial court's finding that, under the particular circumstances of that case, the retention of the keys did not, in and of itself, warrant the conclusion that the plaintiff was in constructive possession of the premises. In this case, it is clearly for the fact finder to determine under the circumstances presented here whether Meyer's retention of the keys to the apartment, along with the other pertinent facts, constituted constructive possession of the apartment until April 4.

For all of these reasons, we hold that the trial court erred in granting summary judgment on Meyer's complaint.

### III

■ The final issue raised by Cohen is the question of attorney fees. She first argues that although Meyer prevailed on her complaint pursuant to section 5—12—080, she is not entitled to attorney fees because the city council subsequently deleted the subsection granting them under that section to a prevailing party. Cohen also contends that, assuming *arguendo*, that Meyer was entitled to attorney fees, the $6,484.40 award was unreasonable and should be set aside. Because we reverse the trial judge's grant of summary judgment in favor of Meyer on her complaint, we also reverse the trial court's award to her of attorney fees; therefore, we have no occasion to determine the reasonableness of Judge Klitz's award. However, since the question of whether a prevailing party is entitled to attorney fees may arise again on remand, we address the issue here.

We find Cohen's argument that Meyer would not be entitled to attorney fees as a prevailing party to be baseless. When the city council amended the ordinance effective November 6, 1991, it simply deleted the attorney fees provision from the specific section where that relief was previously available and enacted a blanket attorney fees section awarding them to any prevailing party under the ordinance. (Chicago Municipal Code § 5—12—080 (1990).)[4] Therefore, we find that should Meyer once again prevail on her complaint, she would be entitled to reasonable attorney fees under the ordinance.

Finally, Cohen contends that although she was not entitled to attorney fees on her successful counterclaim, based on the ordinance then existing, we should retroactively apply the new enactment entitling any prevailing party under the ordinance to attorney fees and remand the cause so that the trial court may award her reasonable attorney fees. We disagree.

The general rule in this State is that absent express language to the contrary, an amendatory act is to be construed prospectively. (*People v. Fiorini* (1991), 143 Ill. 2d 318, 332, 574 N.E.2d 612, 617; *Rivard v. Chicago Fire Fighters Union, Local No. 2* (1988), 122 Ill. 2d 303, 308-09, 522 N.E.2d 1195, 1198.) However, "[a]n exception to the rule of prospectivity arises where the legislature intended that the

---

[4]The only exception to the general rule that a prevailing party is entitled to attorney fees and costs under the new ordinance is for forcible entry and detainer actions. Chicago Municipal Code § 5—12—180 (1990).

amendment apply retroactively and where the amendment applies only to changes in procedure or remedies, rather than substantive rights." *Fiorini*, 143 Ill. 2d at 333, 574 N.E.2d at 617, citing *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 390-91, 415 N.E.2d 1034, 1041-42.

In the case *sub judice*, however, it matters not whether the attorney fees provision can be applied retroactively, for the ordinance expressly provides that it is to be applied only to rental agreements entered into after the effective date of the new ordinance. (Chicago Municipal Code § 5—12—010 (1990).) Consequently, we find that Cohen is not entitled to attorney fees under the new ordinance even though she was a prevailing party on her counterclaim.

For all of the foregoing reasons, we affirm Judge Brownfield's decision not to award Cohen attorney fees on her counterclaim, but we reverse Judge Klitz's grants of summary judgment and attorney fees on Meyer's complaint, and we remand the cause for further proceedings consistent with the views expressed in this opinion.

Affirmed in part; reversed in part and remanded.

HARTMAN and DiVITO, JJ., concur.