MARK ALLEN, Plaintiff-Appellant, v. EDWARD J.S. LIN *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—04—0831

Opinion filed March 31, 2005.

QUINN, J., specially concurring.

Berton N. Ring, of Berton N. Ring, P.C., of Chicago, for appellant.

Alvin F. Block, of Block & Landsman, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff appeals from the final order issued by the circuit court of Cook County following the bench trial of a landlord and tenant dispute. We reverse and remand.

On May 21, 2001, plaintiff, Mark Allen, along with three other individuals, entered into a one-year residential lease with defendants, Edward and Judy Lin, for a townhouse located at 1369 E. 55th Place in Chicago. The rent was listed at $1,600 per month and the security deposit was $2,400. Defendants owned and lived in a townhouse located at 1365 E. 55th Place, two units away from the leased unit.

The lease expired on June 30, 2002. On August 6, 2002, defendants gave plaintiff a check for $2,200, stating that they were retaining $200

of the security deposit to make repairs to the kitchen floor. Plaintiff did not cash the check. On August 8, 2002, defendants sent plaintiff a letter notifying him not to cash the initial check because they forgot to deduct $700 which they had paid to the person allegedly subletting the townhouse from plaintiff. On August 18, 2002, defendants sent plaintiff a check for $1,500. Again, plaintiff did not cash the check.

On September 26, 2002, plaintiff filed his five-count complaint against defendants for breach of contract and various violations of the City of Chicago Residential Landlords and Tenants Ordinance (Chicago Municipal Code § 5—12—101 *et seq.* (2004)) (RLTO).

Defendants filed their answer in which they denied various allegations contained in the complaint and raised three affirmative defenses. In addition, defendants filed a counterclaim alleging certain lease violations and seeking $2,350 and attorney fees. Defendants later amended their affirmative defenses, alleging that plaintiff had failed to attach supporting evidence and that plaintiff had not satisfied the terms of the lease.

A bench trial was held on February 18, 2004. Plaintiff called himself and defendant Edward Lin as witnesses. At the close of plaintiff's evidence, defendants moved for a directed verdict on the RLTO claims. After hearing argument, the court granted the motion—finding that under section 5—12—020(a) of the RLTO, the property was exempted from application of the ordinance because it was in an "owner-occupied buildings containing six units or less."[1] The case then proceeded on plaintiff's remaining breach of contract claim and defendants' counterclaim. At the conclusion of the trial, the court entered judgment in favor of plaintiff for breach of contract, awarding him $2,400, plus costs. The court also denied defendants' counterclaim.

Plaintiff filed his notice of appeal on March 30, 2004. As no court reporter had been present at trial, plaintiff's counsel prepared and filed a bystander's statement in connection with his record on appeal, pursuant to Illinois Supreme Court Rule 323 (166 Ill. 2d R. 323). Hearing on entry of the statement was held on May 10, 2004. At the hearing, both defendants and the trial court disagreed with the rendi-

---

[1]Section 5—12—020 of the RLTO provides:

"Rental of the following dwelling units shall not be governed by this chapter, unless the rental agreement thereof is created to avoid the application of this chapter:

(a) Dwelling units in owner-occupied buildings containing six units or less; provided, however, that the provisions of Section 5—12—160 shall apply to every rented dwelling unit in such buildings within the city of Chicago[.]" Chicago Municipal Code § 5—12—020 (2004).

tion of the trial proceedings offered by plaintiff. The parties and the court held a conference and agreed that certain changes were to be made to the statement before the court would certify it. The court continued the matter until May 14, 2004.[2] At the May 14 hearing, plaintiff presented the court with a version of the bystander's statement that did not reflect the changes discussed during the May 10 hearing. Believing the statement to be inaccurate, the court made its own revisions and then allowed it to be entered as amended. The bystander's statement that was entered provides in relevant part:

"Plaintiff testified that the [sic] there were [sic] a series of townhouses in the complex. He estimated the townhouse he rented was one of about ten to fifteen townhouses in the complex. He testified the landlord, Mr. Lin, owned two units in this section, renting one to the plaintiff and residing in the other unit.

* * *

[Plaintiff's counsel] called the defendant, Edward Lin, as an adverse witness. Mr. Lin testified that he did not know the exact number of townhouses in the complex but agreed that the number was more than ten. He stated there were six townhouses 'under one roof.' He stated he owned two of the six townhouses 'under one roof'—living in one and renting the other to [plaintiff].

* * *

At the end of plaintiff's case in chief, defendant moved for a directed verdict on the issue of whether the RLTO applied to the subject unit. Defendant argued that the RLTO did not apply to the subject unit since it falls within an exception to the ordinance. Under section 5—12—20 of the RLTO, 'dwelling units in owner-occupied buildings containing six units or less' are exempt from the ordinance.

* * *

After hearing argument, the court found, based on the testimony and the evidence at trial, that the building, i.e. six unit structure (six townhouses 'under one roof') were [sic] not owned by the defendant. The defendant owned only two dwelling units. Since the number of units owned by the defendant were [sic] less than six, and since the defendant did not own the building, the plaintiff's claim fell within the exclusion set forth in section 5—12—20(a) of the RLTO. In arriving at this decision, the court relied on the definition of a 'dwelling unit' under section 5—12—30 of the RLTO and

[2]Following the May 10 hearing, plaintiff filed a petition for writ of mandamus with the Illinois Supreme Court seeking an order that would require the trial judge to certify the bystander's statement. It appears from the record that the petition was later withdrawn.

the testimony of the witnesses. The court also looked to dictionary definitions for 'building' and 'structure.' "

Plaintiff argues on appeal that the court erroneously found that the RLTO exemption applied to the property at issue; the court erred in considering defendants' "owner-occupied" affirmative defense; and the court prejudiced plaintiff by writing its own Rule 323 bystander's statement when defendants did not contest plaintiff's rendition.

We begin by considering the propriety of the bystander's statement. Plaintiff alleges that the court erred in preparing its own bystander's statement where it was presented with plaintiff's version to which he claims defendants did not object. The record reveals, however, that defendants indeed objected to the original bystander's statement, prepared by plaintiff's attorney, presented on May 10, 2004. Moreover, the parties, along with the court, agreed at that hearing that certain changes would need to be made to clear up the inaccuracies and the matter would be continued until May 14, 2004. However, at the second hearing on the matter, plaintiff submitted a version of the statement which was similar to that presented at the first hearing and failed to reflect many of the changes discussed at the hearing four days prior. Defendants contend that the court was correct, perhaps even obligated, to correct the statement at that juncture because it did not accurately set forth the trial proceedings.

■ Illinois Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)) provides:

> "If no verbatim transcript of the evidence of proceedings is obtainable the appellant may prepare a proposed report of proceedings from the best available sources, including recollection. *** The proposed report shall be served on all parties within 28 days after the notice of appeal is filed. Within 14 days after service of the proposed report of proceedings, any other party may serve proposed amendments or an alternative proposed report of proceedings. Within 7 days thereafter, the appellant shall, upon notice, present the proposed report or reports and any proposed amendments to the trial court for settlement and approval. The court, holding hearings if necessary, shall promptly settle, certify, and order filed an accurate report of proceedings."

■ "Where the proposed report of proceedings does not accurately reflect what occurred before the court during the trial of the case, the trial judge may refuse to certify such a report." *Silverstein v. Grellner*, 15 Ill. App. 3d 695, 697 (1973). Plaintiff argues that the trial court acted erroneously by drafting and then certifying, *sua sponte*, its own version of the proceedings and that the court should have entered plaintiff's version. This argument, however, ignores the fact that the

parties previously discussed the changes at the May 10 hearing and, more importantly, incorrectly interprets Rule 323 as requiring the court to enter a report it believes to be inaccurate. See *Silverstein*, 15 Ill. App. 3d at 697 (appellant's contention that Rule 323 does not allow a trial judge to dismiss a proposed report of proceedings but, instead, requires that he settle and certify a proposed report of proceedings is wholly unsupported).

Plaintiff offers *People v. Seals*, 14 Ill. App. 3d 413 (1973), in support of his argument that the trial court did not follow the proper procedure in entering the bystander's report. In *Seals*, the State's Attorney was ordered to prepare a bystander's statement for a criminal bench trial in which no court reporter had been present. *Seals*, 14 Ill. App. 3d at 414. The State's Attorney did not comply with the order and, after several continuances, the trial judge himself filed a synopsis of the proceedings. *Seals*, 14 Ill. App. 3d at 414. The defendant also filed a statement of what took place which conflicted with that of the judge. *Seals*, 14 Ill. App. 3d at 414. Noting that the procedure set forth in Rule 323 had not been followed, this court found that the judge's statement was insufficient to enable the court to properly review the trial errors alleged. *Seals*, 14 Ill. App. 3d at 414. This holding, however, was based on the fact that the "brief summary supplied by the trial judge" contained "much conclusory language but not enough details for [the appellate] court to determine the propriety of the conclusions." *Seals*, 14 Ill. App. 3d at 414. Plaintiff has not suggested that the statement before the court in this matter suffered from the same deficiencies as that considered in *Seals*. As such, *Seals* does not aid in our determination of this matter.

We find that, under the circumstances discussed above, the trial court did not err by amending, and then entering as amended, plaintiff's proposed bystander's statement.

Next, we consider plaintiff's argument regarding the "owner-occupied" exclusion of the RLTO. Section 5—12—020(a) of the RLTO (the "owner-occupied" exclusion) provides that rental of "dwelling units in owner-occupied buildings containing six units or less" shall be excepted from application of the ordinance. The court found that this exclusion applied to the townhouse plaintiff rented from defendants. The court noted that, according to the testimony of defendant Edward Lin, there were six units "under one roof" and that defendants owned only two of those units—the one in which they lived and the one they rented to plaintiff. The court found that the six units comprised a "building" and, because defendants owned only two units in that building—one of which was occupied by them—they were exempted from application of the RLTO.

Plaintiff contends that the court's application of the exclusion was erroneous. He argues that the townhouses are separate buildings just as if they were single-family homes—thus, the group of units standing side by side, even if "under one roof," did not constitute a "building" for purposes of the ordinance. In response to plaintiff's argument, defendants maintain that the exclusion is clear and unambiguous and that, based on the facts presented at trial, the court's finding was appropriate.

Statutory construction raises questions of law subject to *de novo* review. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103 (2001). It appears that only one case in Illinois interprets the "owner-occupied" exclusion of the RLTO—and the focus of the court's analysis in that case is on what constitutes a "dwelling unit." In *Meyer v. Cohen*, 260 Ill. App. 3d 351, 359 (1993), this court found that a "dwelling unit" under the RLTO consisted of "a part of a structure which *can* be used as a home, residence or sleeping place, regardless of whether it is being employed as such at the time a lease is signed." While this holding does little to help us determine what constitutes a "building" under the ordinance, *Meyer* does provide us some guidance in statutory interpretation:

> "Our supreme court has commanded that '[i]n interpreting a statute, the primary rule, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature.' [Citation.] Our inquiry begins with the language of the statute, but it also entails consideration of 'the reason and the necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.' [Citation.] The intent of the legislature is best evidenced by the language of the statute, and where the enactment is clear and unambiguous, we are not at liberty to depart from its plain meaning. [Citation]. However, statutes are also to be construed in a manner which avoids absurd or unjust results [citation], and our supreme court has stated in that regard:
>> 'Where the language of a statute admits of two constructions, one of which would make the enactment absurd and illogical, while the other renders it reasonable and sensible, the construction which leads to an absurd result must be avoided. [Citations.] A proper interpretation of a provision cannot simply be based on its language; it must be grounded on the "nature, objects and the consequences that would result from construing it one way or the other." [Citation.] Statutes must be construed in the most beneficial ways which their language will permit so as to prevent hardship or injustice, and to oppose prejudice to public interests. [Citation.]' [Citation.]" *Meyer*, 260 Ill. App. 3d at 356.

Thus, we must interpret section 5—12—020(a) in a way that is

logical, that gives effect to the legislative intent, and that protects public interests—which, in this instance, is quite a task. At first glance, it is difficult to comprehend what the city council could have possibly meant to accomplish by enacting this ordinance. Did the council intend to subject to the rules of the RLTO an owner who lives in a building across the street from his rental unit while an owner who lives in the same building as the unit will be exempt? Or, as in this case, did the council intend to exempt the owner of a rented townhouse who lives in a separate townhouse two doors down from the rental unit while the owner of a similarly situated single-family unit where the owner lives elsewhere would be held accountable for violations of the ordinance?

■ In order to resolve this issue of statutory construction, we first look to the language of the ordinance. In doing so, we find that the stated purpose of the RLTO is as follows:

> "It is the purpose of this chapter and the policy of the city, in order to protect and promote the public health, safety and welfare of its citizens, *to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units*, and to encourage the landlord and the tenant to maintain and improve the quality of housing." (Emphasis added.) Chicago Municipal Code § 5—12—010 (2004).

■ Next, we consider the definition of the term "building." Because the RLTO itself does not define the term, we look further within the Chicago Municipal Code for some assistance. We find:

> " 'Building' means a structure, or part thereof, enclosing any occupancy including residential, institutional, assembly, business, mercantile, industrial, storage, hazardous and miscellaneous uses. When separated by firewalls, each unit so separated shall be deemed a separate building." Chicago Municipal Code § 13—4—010 (2004).[3]

In *Sandstrom v. De Silva*, 268 Ill. App. 3d 932 (1994), this court held that, under section 13—4—010 of the Chicago Municipal Code, each townhouse in a group of townhouses constituted a separate building. In *Sandstrom*, the administrator of the estate of a woman who died as a result of a townhouse fire filed a wrongful death and survival action against the townhouse owner and the townhouse owner's association on the ground that they did not equip and maintain a smoke

---

[3]We note that defendants argued during oral argument that, because the Chicago Municipal Code contains various definitions of the term "building," we cannot strictly rely on a single one. We find, however that the other definitions provided in the Code do not contradict the definition provided in Title 13 and, therefore, we reject defendants' argument.

detector in the townhouse. The relevant statute and ordinance relating to the installation of smoke detectors required that the owner of the "building" or "structure" was obligated to install the smoke detector. Looking to section 13—4—010 of the Chicago Municipal Code, the court found that each townhouse unit, which was separated by fire walls from its neighboring unit, was a separate building—and, as such, the association was absolved from liability. *Sandstrom*, 268 Ill. App. 3d at 936.

■ Bearing in mind that the purpose of the ordinance is, in part, to establish the rights and obligations of the landlord and the tenant and also following our logic in *Sandstrom*, we find that each townhouse constitutes a separate building for purposes of the RLTO. As such, we conclude that the trial court was incorrect in finding that the exclusion under section 5—12—020(a) applied to the property in this case. We reverse the trial court's decision and remand this cause for further proceedings.

Having reached this conclusion, we need not consider plaintiff's argument that the exclusion requiring "six units or less" does not apply because there are actually eight townhouses in a row, not merely six as defendant testified. We note that the evidence in support of this alternative argument, which includes various documents from the Cook County assessor's office website, was not presented at trial. Thus, it is outside the scope of this appeal.

Because our resolution of the first issue in this case is dispositive of the outcome, we need not address plaintiff's remaining argument regarding the court's consideration of defendants' affirmative defenses.

Reversed and remanded.

REID, P.J., concurs.

JUSTICE QUINN, specially concurring:

I completely concur with the majority's holding that the exclusion under section 5—12—020(a) of the City of Chicago Residential Landlord and Trust Ordinance (RLTO) does not apply in the instant case. As the majority points out, this is a case of first impression as to how to define the phrase "dwelling units in owner-occupied buildings containing six units or less" and whether the section applies to townhouses. I write to express my belief that the city council did indeed intend to except from the requirements of the RLTO owners who live in the same building as the unit of the tenant seeking to invoke the protections afforded by the RLTO. The city council may have based this exception on a belief that if an owner lived in the same building

as the tenant(s), there was less likelihood that the building would be in a rundown condition, evincing structural defects or the presence of vermin or other conditions which would negatively impact on the livability of the dwelling units of the tenants. Our holding that each townhouse constitutes a separate building for purposes of the RLTO is completely consistent with this principle.

I also write separately to point out that we are not deciding whether or not the Security Deposit Return Act (765 ILCS 710/1 (West 2002)) or the Security Deposit Interest Act (765 ILCS 715/1 (West 2002)) apply. These Acts are analyzed in *Hoffman v. Altamore*, 352 Ill. App. 3d 246 (2004).