Filed November 20, 2006

No. 1-05-1263

FRANCESCA DETRANA,                          )          Appeal from the
                                            )          Circuit Court of
            Plaintiff-Appellant,            )          Cook County.
                                            )
    v.                                      )
                                            )
JERRY SUCH and SERIFA SUCH,                 )
                                            )
            Defendants-Appellees            )
                                            )
(Berton N. Ring,                            )          Honorable
                                            )          Joyce Marie Murphy Gorman,
            Appellant).                     )          Judge Presiding.


        JUSTICE ROBERT E. GORDON delivered the opinion of the court:

        In this landlord-tenant dispute, plaintiff Francesca Detrana

appeals from an order of the circuit court entering partial summary

judgment in defendants' favor on the issue of "ownership," and an

order (following a bench trial) imposing Supreme Court Rule 137

sanctions (155 Ill. 2d R. 137) against plaintiff's attorney.  At

trial, the trial court ruled that, pursuant to section 5-12-020(a)

of the City of Chicago Residential Landlord and Tenant Ordinance

(RLTO) (Chicago Municipal Code §5-12-020(a) (2004)), the subject

building coowned by defendants Jerry and Serifa Such and Serifa's

father, Nasrulla Murtus,[1] was exempted from the operation of the

_____

        [1]Murtus, who died prior to trial, was not named as a defendant in this case.

1-05-1263

RLTO because it was "owner-occupied." The court further denied plaintiff's request for sanctions against defendants and their counsel. There was no report of proceedings or bystanders report filed in this matter. However, in reading the record in this case together with the briefs of both parties, this court concludes that it can determine the issues in this appeal. We find that the record is sufficiently complete to allow us to consider the merits of the arguments raised. *Robles v. Chicago Transit Authority*, 235 Ill. App. 3d 121, 601 N.E.2d 869 (1992).

On appeal, plaintiff contends: (1) the term "owner-occupied," as used in the RLTO, should apply only to titleholders who maintain a measure of control over the premises; (2) even if this court finds that bare legal title constitutes ownership within the meaning of the RLTO, summary judgment in favor of defendants was improper because genuine issues of material fact existed regarding whether defendants waived the RLTO exemption and whether Murtus' occupancy was designed to avoid application of the RLTO; and (3) plaintiff presented an objectively reasonable argument regarding the definition of "ownership" as incorporating an element of control, thereby precluding imposition of Supreme Court Rule 137 sanctions (155 Ill. 2d R. 137) against his attorney, Berton Ring. We affirm in part and reverse in part.

STATEMENT OF FACTS

2

Plaintiff entered into a lease on June 5, 1999, "for apartment unit #3" located at 1246 West Altgeld in Chicago. The monthly rent was $1,525 and the security deposit was $2,287.50. Serifa Such was listed as the lessor. The expiration date of the lease was June 30, 2000. Plaintiff renewed the lease on June 30, 2000, with the rent listed as $1,600 and the security deposit $2,362.50. Plaintiff moved out of the premises prior to June 27, 2001, having "paid all the rents to Serifa through June 30, 2001." On August 15, 2001, Serifa sent plaintiff a list of deductions against plaintiff's security deposit plus the balance of the deposit ($1,077.54), "together with the receipts," explaining the deduction of $116.25 for two late charges, and giving credit for two years of interest on the deposit.

On October 22, 2001, plaintiff filed a four-count complaint against defendants. Counts I, II and IV were based on claims under the RLTO. Count III was based on breach of contract for mishandling her security deposit. Plaintiff further alleged in her complaint that the "subject *** building contains two units, is not owner occupied and is subject to the [RLTO]."

On January 8, 2003, defendants filed a motion for partial summary judgment on counts I, II and IV of plaintiff's complaint, arguing that the RLTO was inapplicable to the property because Murtus, one of the titleholders, resided in the basement apartment,

3

thereby excluding the building from operation of the RLTO pursuant to section 5-12-020 of the RLTO. Defendants attached, in support of their motion, the quitclaim deed by which Murtus conveyed title to the building to himself, Serifa, and Jerry; Serifa's supplemental and second supplemental affidavits; and a portion of Serifa's deposition. In her affidavits, Serifa averred that: Murtus had resided in and occupied the premises for approximately 37 years; during plaintiff's tenancy, the basement apartment was occupied by Murtus and, at times, by his grandson, Adam; and Murtus was 78 years old in 1999 and was absent from his basement apartment approximately two or three weeks out of the entire year due to medical treatments. In her deposition, Serifa testified that: at times from 1999 to 2001, when Murtus was ill, he would stay with defendants for short periods of time, but then would return to his home at the 1246 West Altgeld building; and Murtus' furniture, furnishings and clothing were at the Altgeld building. Defendants further argued that plaintiff's affidavit, which they attached, "does not state that Nasrulla Murtus did not occupy the subject property *** from 1999-2001," and that plaintiff admitted in the affidavit that Murtus received his mail at the property. Defendants further argued that plaintiff's affidavit simply stated that plaintiff never saw, communicated with or met Murtus. Defendants explained this fact throughout Serifa's deposition, in

4

which Serifa testified that Murtus was very ill and a private person. Defendants further explained, pursuant to Serifa's supplemental and second supplemental affidavits, that the reason plaintiff never saw Murtus, but did see Adam, was that Adam went to work every day, while Murtus was retired and stayed at home. Lastly, defendants maintained that because plaintiff was working nights and sleeping during the day, she could not have personal knowledge of Murtus' whereabouts and activities.

Plaintiff filed a memorandum of law in opposition to defendants' motion for partial summary judgment. Plaintiff argued that a question of fact existed as to whether Murtus occupied the basement apartment. Plaintiff maintained that Serifa was lying about Murtus' occupancy, based on the fact that the basement apartment did not have electric service or direct heat, and Murtus lived there without a telephone. Plaintiff further argued that a "letter" from defendants to plaintiff, showing a deduction for interest on plaintiff's security deposit for her two-year tenancy pursuant to the RLTO, was evidence that Serifa "treated the RLTO *as applying*" to the property, and "the purported applicability of the 'owner-occupied' exemption [was] a convenient fabrication concocted *after suit was commenced*." (Emphases in original.)

Plaintiff also argued that, although Murtus was a titleholder, he could not be deemed an owner for purposes of the owner-occupied

exemption because he did nothing concerning the management of the building and kept his "ownership" secret. Plaintiff maintained that the thrust of the RLTO is to ensure the proper treatment of tenants by landlords and that this purpose is not applicable where the party has no control over the status of the tenants' rights.

In opposition, plaintiff presented her affidavit, which included her averment that she never saw Murtus in the building and that the basement apartment was unoccupied (except by Adam for two or three months) during her tenancy. Plaintiff also relied on Serifa's deposition testimony regarding the facts that the basement unit did not have its own direct heating, electricity or telephone service to the apartment.

The trial court granted partial summary judgment on the issue of ownership, finding that Murtus was a titleholder, but denied the motion on the issue of occupancy, finding that competing deposition testimony sufficiently created a factual dispute.

A trial was conducted on plaintiff's complaint and, on November 3, 2002, the trial court entered judgment in favor of defendants and against plaintiff on the RLTO counts, finding that the RLTO did not apply because the building was "owner-occupied" by Murtus. The trial court also entered judgment in favor of plaintiff on her breach of contract claim regarding her security deposit. Defendants tendered payment of the judgment against them

to plaintiff, but plaintiff's counsel refused to accept it.

Defendants then filed a petition for Supreme Court Rule 137 sanctions against Berton N. Ring, plaintiff's attorney, alleging nine sanctionable filings and/or statements made by him. Plaintiff later filed a petition for attorney fees against defendants and their counsel, James Glass, seeking sanctions pursuant to Supreme Court Rule 137 and Rule 219(b) (155 Ill. 2d R. 137; 166 Ill. 2d R. 219 (b)). On September 22, 2004, the trial court filed a written opinion granting defendants' petition for Rule 137 sanctions based on two of the nine allegations made by defendants. Those allegations were:

> "8. Taking a legal position that a titleholder is not an 'owner' of property; and
>
> 9. Bringing causes of action under certain sections of the RLTO in absence of a causal basis to support the allegations in the complaint that the subject property was not owner-occupied."

Pursuant to number 8, the trial court sanctioned Ring for arguing, in a section of plaintiff's memorandum of law in opposition to defendants' motion for summary judgment, that a titleholder was not an owner. With regard to allegation number 9, the trial court imposed sanctions apparently because Ring had told the court he

7

would be filing a trial memorandum in support of plaintiff's argument on "ownership" but, in fact, plaintiff's "Trial Memorandum of Law on Owner Occupancy," in the court's view, contained lengthy "disjointed" arguments on the issue of "occupancy," not "ownership." The trial court further ruled, however, that plaintiff had a right to otherwise make arguments on the issue of "occupancy" and did not impose sanctions for that.

The court also denied plaintiff's petition for attorney fees, and imposed sanctions, on its own initiative, against Ring for filing a Supreme Court Rule 137 petition against defendants. The court found that the petition was not wellgrounded in supportive facts, it was not warranted by existing law, and it was filed for an improper purpose: harassment and to increase the cost of litigation. The court also granted defendants leave to file a petition for reasonable expenses and attorney fees incurred because of the filing of the improper pleading. This appeal followed.

## ANALYSIS

### I. RLTO Section 5-12-020 Exclusion

Plaintiff argues that in order for the owner-occupied exclusion under section 5-12-020 to apply to a building containing six units or less, the "owner" must exercise control over the property that is to be excluded. Plaintiff bases his contention on his interpretation of the RLTO definition of "owner" as a person

8

"in whom is vested all or part of the legal title to property, or all or part of the beneficial ownership and a right to present use and enjoyment of the premises." Chicago Municipal Code §5-12-030(c) (2004). Plaintiff claims that the words "right to present use and enjoyment of the premises" mean "control of the subject *** property and enjoying the benefits of ownership, such as the right to receive income." To find otherwise, plaintiff argues, would result in every six-flat landlord in Chicago simply deeding a nominal title interest to a tenant without any real ownership rights, thus circumventing the RLTO's requirements. Plaintiff further maintains that his construction of the term "owner" to include an element of control is consistent with the purpose and policy of the RLTO to protect tenants and serve the goal of better housing. Plaintiff concludes that Murtus could not be deemed an owner based on his status as a titleholder because his daughter and her husband maintained exclusive control in managing the property and receiving the income and benefits of the refinancing of the property.

Defendants contend that the definition of "owner" in the RLTO is clear and unambiguous. Defendants argue that plaintiff seeks to add a term not intended by the city council.

Statutory construction raises questions of law and, therefore, our review is *de novo.* *Allen v. Lin*, 356 Ill. App. 3d 405, 411,

9

1-05-1263

826 N.E.2d 1064 (2005). In interpreting a statute, "'the primary rule, to which all other rules are subordinate, is to ascertain and give effect to the true intent of the legislature.'" *Meyer v. Cohen*, 260 Ill. App. 3d 351, 356 (1993), quoting *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

> "Our inquiry begins with the language of the statute, but it also entails consideration of 'the reason and the necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.' [Citation.] The intent of the legislature is best evidenced by the language of the statute, and where the enactment is clear and unambiguous, we are not at liberty to depart from its plain meaning. [Citation.] However, statutes are also to be construed in a manner which avoids absurd or unjust results ***." *Meyer*, 260 Ill. App. 3d at 356.

The language of a statute must be given its plain and ordinary meaning and "[t]he dictionary can be used to ascertain the ordinary and popular meaning of words." *Stein v. Chicago Park District,* 323 Ill. App. 3d 574, 577 (2001).

The stated purpose of the RLTO is "to establish the rights and

10

obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing" in the City of Chicago. Chicago Municipal Code §5-12-010 (2004). Section 5-12-020 of the RLTO provides: "Dwelling units in owner-occupied buildings containing six units or less" shall be excepted from application of the RLTO. Chicago Municipal Code §5-12-020(2004). Section 5-12-030(c)) defines "owner" as a person

> "in whom is vested all or part of the legal
> title to property, or all or part of the
> beneficial ownership and a right to present
> use and enjoyment of the premises." Chicago
> Municipal Code §5-12-030(c)) (2004.)

Black's Law Dictionary defines "owner" as "[o]ne who has the right to possess, use, and convey something." Black's Law Dictionary 1130 (7th ed. 1999). "Ownership" is defined as "[t]he collection of rights allowing one to use and enjoy property, including the right to convey it to others. Ownership implies the right to possess a thing, *regardless of any actual or constructive control*." (Emphasis added.) Black's Law Dictionary 1131 (7th ed. 1999).

Plaintiff here essentially interprets "owner-occupied" as "owner-occupier-controlled." Plaintiff claims that Murtus, at best, was only a "fractional 'titleholder' " of the property, since

11

he did not manage or collect any income from it. However, the RLTO's definition allows for such an owner's "fractional" interest by providing that an owner is a person with "all *or part of* the legal title to property, or all *or part of* the beneficial ownership *and* a right to present use and enjoyment of the premises." (Emphases added.) Chicago Municipal Code §5-12-030(c)) (2004). Even with a "fractional interest," as plaintiff argues, Murtus clearly had a right to possession of the property: he was a titleholder and, as the trial court determined, therefore an owner. He had use of the property: he rented out two units and occupied the third. He had the right to convey the property and, in accordance with this right, he quit-claimed the property to himself and his daughter and her husband. That Murtus chose to exercise all these rights in a manner apparently inconsistent with other owners is of no consequence. The fact is that Murtus, as a titleholder/owner, possessed all the rights of an owner and had the legal right to exercise his rights as he saw fit, whether through his personal control or through delegation of that control, as here, by instructions to defendants pursuant to a power of attorney.

We also find, with respect to plaintiff's claim that present use and enjoyment implies requiring, and exercising, control over the property, that this was not the intention of the city council.

1-05-1263

In *Meyer v. Cohen*, 260 Ill. App. 3d 351, 632 N.E.2d 22 (1993), a case analogous to the case at bar, the defendant owned an eight-unit building at the time the plaintiff signed a lease for one of the units. Three other units (including the apartment where the defendant lived) were occupied. Upon later terminating her lease, the plaintiff filed a complaint against the defendant, claiming that the defendant failed to comply with the RLTO in returning her security deposit. The trial court ruled in favor of the plaintiff, and the defendant appealed.

On appeal, the defendant in *Meyer* argued that the RLTO was inapplicable to her building because it was owner-occupied and contained six or less units. The defendant further argued that in order for the RLTO to apply, a "dwelling unit" must "actually, not possibly" be occupied at the time a lease is signed, and only four of the seven available units were occupied at the time the plaintiff signed her lease. In rejecting the defendant's argument, the *Meyer* court stated that her

> "'actual occupancy' interpretation clearly contradicts one of the city council's express purposes for enacting the ordinance: 'to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units.' *** [Citation.] Were we to

13

adopt [the defendant's] construction of the ordinance, landlords would be unsure whether they are subject to the provisions of the ordinance, as its applicability would depend on how many units were being occupied or how many leases were in effect at the time a lease was signed, thus controverting the express purpose of the statute, *i.e.*, to fix more clearly the rights and obligations which landlords and tenants have *vis-a-vis* each other." *Meyer*, 260 Ill. App. 3d at 356.

The *Meyer* court further stated that the defendant's construction would lead to the result that a landlord would be subject to the RLTO regarding some tenants, but not others, depending upon the number of units occupied when a lease was signed. Similarly, tenants in the same building would be afforded different rights and responsibilities under the law based on the time they signed their leases, which the city council could not have intended. The *Meyer* court therefore held that the defendant was subject to the RLTO, and it was of no import that four of the seven inhabitable units were occupied when the plaintiff signed her lease.

In the case at bar, a construction of the definition of "owner" to include the element of control could lead to a result

14

that was not intended by the city council. For example, landlords' and tenants' rights and obligations could be subject to continual changes, contrary to the purpose of the RLTO to make them more clearly fixed. Specifically, those rights and obligations would be subject to a determination of what constitutes a sufficient degree of control, the time during which the control must be exercised or not exercised, and whether partial or continuous exercise of the control was required during a lease. Further, all of these considerations would depend upon whether the owner remained the same or, if the property were sold to another, whether the new property owner exercised control of the property in the same manner as the previous owner during his tenants' leases. Clearly, the obligations and rights of landlords and tenants could never be clearly fixed, since a particular owner's control would be at issue each time a tenant signed a lease, a fact of which an ultimate tenant may not have notice.

Moreover, the fact that Murtus, pursuant to a power of attorney to defendants, allowed defendants to manage and receive income from the property does not conflict with the purpose of the RLTO, which allows for the owner-occupied exclusion from application of the RLTO. The fact that Murtus did not claim the income from the property, and defendants did, has no relevance to the issue of whether Murtus was an owner, since, like the term

15

"control," which is not a term in the RLTO definition of "owner," there simply is no requirement in the definition that an owner exercise his right to receive all or part or any of the income from the property.

We find that the RLTO definition of "owner" is clear and unambiguous. Thus, there is no need to consider how that term has been interpreted in the cases relied upon by plaintiff. We note only that those cases, both from Illinois and other jurisdictions, are distinguishable or did not involve the RLTO but, rather, the Animal Control Act, the Liquor Control Act, the Structural Work Act, and the Property Tax Code where the term "owner" had no fixed meaning.

## II. Partial Summary Judgment Order

Plaintiff argues that even if this court finds that bare legal title constitutes ownership within the meaning of the RLTO, summary judgment in favor of defendants was improper because genuine issues of material fact existed regarding whether defendant waived the RLTO exemption *and* whether Murtus' claimed occupancy of the premises was designed to avoid application of the RLTO. Plaintiff's arguments are misplaced. The trial court granted partial summary judgment by ruling on ownership only. The issues of waiver and whether the property was owner-occupied as intended by the ordinance were questions of fact that should have been part

16

of the evidence at trial. The trial court did not grant summary judgment on those issues. As previously indicated, no report of proceedings or bystanders report at trial was part of the record in this case. The burden is on the appellant to present a record of sufficient completeness in order to question the evidence on issues raised at trial (*Robles*, 235 Ill. App. 3d at 126), and appellants in the case at bar failed to do so on the issues of waiver and whether Murtus' claimed occupancy of the premises was designed to avoid application of the RLTO.

We also note that, in addition to failing to provide a report of proceedings at trial, plaintiff did not include the transcript of proceedings on defendants' motion for summary judgment.[2]

Since we do not know what occurred at trial, we cannot make any determination as to any of the court's findings at trial. We therefore must presume that the court properly decided the issues. See *Webster v. Hartman*, 195 Ill. 2d 426, 432, 749 N.E.2d 958 (2001) ("the appellant has the burden to present a sufficiently complete record" and, "absent a record, 'it [is] presumed that the order

---

[2]Plaintiff argues that this court can determine all issues on appeal from the trial court's orders, deposition testimony and affidavits. However, there is no indication in any of these regarding the issue of waiver of the RLTO, except for defendants' mention of it in their reply to plaintiff's memorandum of law in opposition to defendant's motion for summary judgment, which pertained to the issue of occupancy and the credit given plaintiff for interest on her security deposit.

17

entered by the trial court [is] in conformity with the law and had a sufficient factual basis.' [Citation.]"). *Webster,* 195 Ill. 2d at 432. In addition, appellant does not claim any trial errors in this appeal concerning waiver or the avoidance of application of the RTLO.

### III. Sanctions

#### A. Defendants' Motion for Rule 137 Sanctions

Ring contends that he presented an objectively reasonable argument as to why the definition of ownership incorporates an element of control and, therefore, the trial court abused its discretion in sanctioning him pursuant to Supreme Court Rule 137. (155 Ill. 2d R. 137).

Supreme Court Rule 137 provides in relevant part:

> "The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any

18

> improper purpose, such as to harass or to
> cause unnecessary delay or needless increase
> in the cost of litigation."  155 Ill. 2d R.
> 137.

"A determination of whether to grant a party's motion for sanctions is a matter committed to the sound discretion of the trial court. [Citation.] The trial court's decision will not be disturbed on appeal absent an abuse of discretion."  *Peterson v. Randhava*, 313 Ill. App. 3d 1, 14, 729 N.E.2d 75 (2000).  We consider the following factors on review: "(1) whether the trial court made an informed ruling; (2) whether the court based its ruling on valid reasons that fit the case; and (3) whether the trial court's ruling followed logically from the application of the reasons stated to the particular circumstances of the case." *Peterson*, 313 Ill. App. 3d at 14.

While the trial court determined that a titleholder was an owner for purposes of the RLTO, the court further stated that Ring had the right to pursue the occupancy issue.  However, the trial court nonetheless found sanctionable Ring's repeated allegations that Murtus, although a titleholder, was not an "owner" *for purposes of the RLTO*.  We disagree with the court's finding.  The issue of ownership, according to Ring, included a determination of whether Murtus occupied the premises, along with

19

being a titleholder. Ring's argument, therefore, was a legal one, even if the trial court was disposed to reject it because of the court's prior ruling that Murtus was a titleholder and therefore an owner of the property. In light of the trial court's holding, Ring's repeated arguments to the contrary were merely his disagreement with the court's decision throughout the proceedings, which went to the ultimate decision to be made by the trial court, which itself was subject to a determination by reviewing courts.

We further observe that plaintiff did not dispute that Murtus was a titleholder or owner, but rather whether Murtus was an "owner" for purposes of the RLTO's "owner-occupied" provision. Additionally, no case law existed regarding the interpretation of "owner-occupied" under the RLTO, which plaintiff maintained included an element of control. We do not find plaintiff's argument without merit, particularly in light of the fact that, prior to the trial court's ruling, another term of the RLTO had been challenged, requiring a reviewing court to interpret that term. *Meyer*, 260 Ill. App. 3d at 356-58 (on appeal, the defendant's interpretation of the meaning of the term "dwelling unit" under the RLTO was rejected).

Here, the trial court found that Ring's repeated arguments, challenging Murtus' ownership based on the fact that he was a

titleholder, were sanctionable. The trial court chose not to accept plaintiff's argument that Murtus could be an owner within the meaning of "owner-occupied" in the RLTO only if he also exercised control over the property. Nevertheless, as stated above, Ring's contentions on this issue were proper legal arguments, in light of the fact that no case law existed on this issue. Accordingly, we find that the trial court abused its discretion in sanctioning Ring on this issue.

In light of our disposition above, we also find that the trial court abused its discretion in sanctioning Ring, pursuant to defendants' allegations 8 and 9, for pursuing this argument in plaintiff's memorandum in opposition to defendants' motion for summary judgment and plaintiff's trial memorandum on owner occupancy.

### B.   Sanctions Against Ring

We also find that the trial court abused its discretion in imposing, on its own initiative, Rule 137 sanctions against Ring for filing his petition for attorney fees, which included allegations pertaining to the security deposit with respect to the RLTO provisions. The focus for the trial court's imposition of sanctions was plaintiff's allegation that defendants falsely answered (in the negative) the question of whether they commingled the security deposit in violation of the RLTO. The

court reasoned that there was no need for defendants to admit that they commingled the security deposit when they believed the RLTO did not apply. Ring, in his brief before this court, contends that instead of denying this allegation, defendants could have properly admitted to commingling and to not paying interest on a timely basis and still could have raised the owner-occupied exemption as a defense. In any event, the court stated that the allegations as a whole were not well-grounded in supportive facts and were not warranted by existing law, and the petition was filed for an improper purpose: harassment and to increase the cost of litigation. We observe, however, that, again, Ring's allegations turned on his understanding of the RLTO and what constituted an "owner-occupied" exemption. We therefore find that it was an abuse of discretion for the trial court to impose sanctions for the filing of plaintiff's petition for attorney fees.

CONCLUSION

For the reasons stated, we affirm the circuit court's judgment in part, finding that the RLTO did not apply to defendants' property because the owner-occupied exemption in section 5-12-020 was applicable, and we reverse the judgment of sanctions against plaintiff's attorney, Berton Ring.

Affirmed in part and reversed in part.

22

1-05-1263

CAHILL and GARCIA, JJ., concur.