MICHAEL BERVEN, Plaintiff-Appellant, v. MARQUETTE NATIONAL BANK *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 1—08—3296

Opinion filed August 11, 2009.

Mark A. Silverman, of Chicago, for appellant.

May Toy, of Chicago, appellee *pro se*.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Following a bench trial, judgment was entered in favor of defendants Gee Toy and Marquette National Bank Trust No. 14662, dated December 2, 1998 (Landlord), in plaintiff, tenant Michael Ber-

ven's action for breach of contract and various violations of the Residential Landlord and Tenant Ordinance of the City of Chicago (RLTO) (Chicago Municipal Code §5—12—010 *et seq.*). Plaintiff appeals from the trial court's determination that his rental unit was located on property which was "owner-occupied" and therefore not subject to the RLTO. We affirm.

## BACKGROUND

On February 22, 2008, plaintiff entered into a written lease agreement with Gee Toy to rent "315 S. Ashland, Coach House North (1NRH), Chicago," commencing on April 15, 2008, and terminating on June 15, 2010. At signing, plaintiff gave Gee a check in the amount of $2,450 for the security deposit and first month's rent. On April 25, 2008, plaintiff's counsel sent Landlord a letter terminating the lease, effective April 26, 2008, for Landlord's failure to provide with the lease certain disclosures required by the RLTO. The letter also requested remittance of plaintiff's security deposit ($1,225) and the remaining balance of April's rent. Landlord failed to return plaintiff's security deposit or prepaid rent within 45 days and provided no written explanation for withholding the security deposit.

On July 17, 2008, plaintiff filed a small claims complaint alleging, *inter alia,* that Landlord violated section 5—12—170 of the RLTO (Chicago Municipal Code §5—12—170 (amended October 1, 2003)) by failing to provide an RLTO summary with the lease.[1]

At trial, May Toy, Gee Toy's sister, testified that she is the beneficiary of Trust No. 14662, dated December 2, 1998, and that she lives in the front building located at 315 South Ashland with Gee, who manages the property. May testified that the coach house is a separate building that shares the same street address as the main building, *i.e.,* 315 South Ashland. Plaintiff testified that there were three or four apartments in the main house and added that he never moved into the

---

[1]Section 5—12—170 of the RLTO states:

"The commissioner of the department of community development shall prepare a summary of [the RLTO] ***. A copy of such summary shall be attached to each written rental agreement when any such agreement is initially offered to any tenant or prospective tenant by or on behalf of a Landlord and whether such agreement is for a new rental or a renewal thereof. Where there is an oral agreement, the Landlord shall give to the tenant a copy of the summary.

\* \* \*

If the Landlord acts in violation of this section, the tenant may terminate the rental agreement by written notice." Chicago Municipal Code §5—12—170 (amended October 1, 2003).

coach house because there had been a verbal agreement that the apartment would be cleaned prior to April 15 and it was never cleaned.

After plaintiff rested his case, May, appearing *pro se* on behalf of Landlord, made a motion for a directed finding based on section 5—12—020(a) of the RLTO (Chicago Municipal Code §5—12—020(a) (amended September 4, 2003)) (the "owner-occupied" exclusion), which provides that "[d]welling units in owner-occupied buildings containing six units or less" shall not be governed by the RLTO. May argued that the RLTO did not apply because the 315 South Ashland property, including the coach house, was owner-occupied and contained six units or less. May explained that even though the coach house had two rental units, it was appurtenant to the main building and she and Gee used it as a parking facility and for storage. Plaintiff responded that the coach house, which he rented, was a separate building from the main house located at 315 South Ashland, and the coach house was not owner-occupied.

The trial court granted Landlord's motion for a directed finding, stating: "We have one property owner at 315 South Ashland. We have one PIN number. We have the Assessor determining that to be one property. *** I think this is the type of case that the City Council decided should be exempted from the RLTO ***." This appeal followed.

## ANALYSIS

On appeal, the sole issue is whether a coach house appurtenant to an owner-occupied building is "owner-occupied" within the meaning of the section 5—12—020(a) exclusion.[2]

Initially, we observe that only three cases have interpreted the "owner-occupied" exclusion set forth in section 5—12—020(a) of the RLTO: *Detrana v. Such*, 368 Ill. App. 3d 861, 859 N.E.2d 142 (2006), *Allen v. Lin*, 356 Ill. App. 3d 405, 826 N.E.2d 1064 (2005), and *Meyer v. Cohen*, 260 Ill. App. 3d 351, 632 N.E.2d 22 (1993). In *Detrana*, the plaintiff argued that in order for the owner-occupied exclusion to apply, the owner must exercise control over the property. *Detrana*, 368 Ill. App. 3d at 866, 859 N.E.2d at 147. This court rejected the plaintiff's argument. *Detrana*, 368 Ill. App. 3d at 868-70, 859 N.E.2d at 148-50. The issue in *Allen* was whether the owner-occupied exclusion applied to separate townhouses in the same building, *i.e.*, "under one roof." *Allen*, 356 Ill. App. 3d at 411, 826 N.E.2d at 1068. *Allen* held that the townhouses, which had separate addresses, were separate buildings, and on this basis concluded that the section 5—12—020(a) exclusion

---

[2]Plaintiff concedes in his reply brief that his breach of contract claim is not before this court and that the sole issue is whether the RLTO applies.

did not apply. *Allen*, 356 Ill. App. 3d at 413, 826 N.E.2d at 1070. In *Meyer*, the question was whether the owner-occupied exclusion applied to an apartment complex containing seven units available for inhabitance—one more than the six-unit limit—where only three were occupied at the time of the lease. *Meyer*, 260 Ill. App. 3d at 355, 632 N.E.2d at 25. The *Meyer* court held that the exclusion did not apply, explaining that the actual occupancy of the rental units had no bearing on whether each was a "dwelling unit" as defined in section 5—12—030(a) of the RLTO. *Meyer*, 260 Ill. App. 3d at 358, 632 N.E.2d at 27. Accordingly, whether the city council intended to exclude an owner of a coach house with two rental units who lives in the front building from application of the RLTO is an issue of first impression in Illinois.

Plaintiff contends that the coach house is not an "owner-occupied" building for purposes of applying the owner-occupied exclusion because it is a separate building in which Landlord did not live at any relevant time. Landlord responds that the coach house is part of its "dwelling unit" as defined under section 5—12—030(a) and thus exempt from the RLTO pursuant to the owner-occupied exclusion.

When interpreting an ordinance, our primary goal is to ascertain and give effect to the intent of the legislative body, and the language of the ordinance is the most reliable indicator of that intent. *Willis v. Naico Real Estate Property & Management Corp.*, 379 Ill. App. 3d 486, 490, 884 N.E.2d 752, 755 (2008), citing *Barnett v. Zion Park District*, 171 Ill. 2d 378, 388, 665 N.E.2d 808, 813 (1996). "Where the language is clear and unambiguous, a reviewing court may not depart from its plain meaning by reading into it exceptions that the legislature did not express." *Willis*, 379 Ill. App. 3d at 490, 884 N.E.2d at 755, citing *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). We review the construction and legal effect of the RLTO *de novo. Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 9, 754 N.E.2d 334, 339 (2001).

Our first and only task is to determine whether or not the coach house was "owner-occupied" for purposes of the RLTO. Although the term "owner-occupied" is not defined in the RLTO, the definition of "dwelling unit" in section 5—12—030(a) is helpful in ascertaining the city council's intent with respect to resolving this issue.

■ Section 5—12—030(a) of the RLTO defines "dwelling unit" as:
"a structure or the part of a structure that is used as a home, residence or sleeping place by one or more persons who maintain a household, together with the common areas, land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy

thereof, including garage and parking facilities." Chicago Municipal Code §5—12—030(a) (amended November 6, 1991).

Giving effect to the intent of the city council, we believe that any building or structure included in the definition of a landlord's "dwelling unit" must also be considered to be "owner-occupied" within the meaning of the section 5—12—020(a) exclusion.

■ The record unequivocally demonstrates that the coach house is part of Landlord's "dwelling unit," and thus, we must conclude that it is also "owner-occupied" for purposes of the RLTO. Most notably, it is without question that the coach house is appurtenant to Landlord's residence at 315 South Ashland. This fact alone brings the coach house under the definition of dwelling unit in section 5—12—030(a). Chicago Municipal Code §5—12—030(a) (amended November 6, 1991). In addition, the parties do not dispute that Landlord uses the nonrental portion of the coach house for other activities associated with occupancy, i.e., parking and storage. These uses also render the coach house part of Landlord's "dwelling unit" under section 5—12—030(a). Chicago Municipal Code §5—12—030(a) (amended November 6, 1991). Based on this record and in light of the fact that there is no dispute that the 315 South Ashland property contained six units or less as required by section 5—12—020(a), we uphold the trial court's determination that the owner-occupied exclusion applied to plaintiff's rental unit in this case.

Nevertheless, plaintiff argues that Landlord's "dwelling unit" is the main building at 315 South Ashland and does not include the coach house. Plaintiff, quoting a portion of section 5—12—030(a), asserts that no place is rendered a "dwelling unit" unless it is the "part of a structure that is used as a home, residence or sleeping place by one or more persons who maintain a household." Plaintiff's argument is flawed where he would have us read out of section 5—12—030(a) the words that immediately follow the above-quoted text: "together with the common areas, land and appurtenant buildings thereto, and all housing services, privileges, furnishings and facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities." Chicago Municipal Code §5—12—030(a) (amended November 6, 1991). A complete reading of section 5—12—030(a) clearly shows that the coach house, which is appurtenant to Landlord's residence in the main building and used by Landlord as a parking facility and for storage, is part of Landlord's "dwelling unit."

In reaching this conclusion, we reject plaintiff's reliance on *Allen* for the proposition that the coach house was not "owner-occupied" because it was a separate building in which Landlord did not reside. *Allen* does not apply for two reasons. First, unlike the tenant's town-

house in *Allen*, the coach house is appurtenant to Landlord's residence and shares the same street address as Landlord's residence (315 South Ashland).[3] Second, also unlike *Allen*, Landlord in this case used the nonrental portion of the coach house as a parking facility and for storage.

We note in addition that the *Allen* court made no specific mention of section 5—12—030(a) of the RLTO, the definition of "dwelling unit," nor did it provide any independent analysis of this provision, which is central to the resolution of the appeal in the instant case.

We also reject plaintiff's contention that the special concurrence in *Allen* demonstrates that the purpose behind the "owner-occupied" exclusion does not favor its application to the coach house. In *Allen*, the pertinent part of the special concurrence stated:

"[T]he city council did indeed intend to except from the requirements of the RLTO owners who live in the same building as the unit of the tenant seeking to invoke the protections afforded by the RLTO. The city council may have based this exception on a belief that if an owner lived in the same building as the tenant(s), there was less likelihood that the building would be in a rundown condition, evincing structural defects or the presence of vermin or other conditions which would negatively impact on the livability of the dwelling units of the tenants. Our holding that each townhouse constitutes a separate building for purposes of the RLTO is completely consistent with this principle." *Allen*, 356 Ill. App. 3d at 413-14, 826 N.E.2d at 1070 (Quinn, J., specially concurring).

Plaintiff argues that cold air and water, leaks, drafts and flooding in the coach house do not impact the habitability of Landlord's sleeping place. Plaintiff further argues that Landlord does not live under the coach house roof, use its plumbing, or rely on its furnace, and Landlord's "car doesn't mind an inch of standing water, 40 degree room temperature and no hot water at the Coach House."

We agree with the special concurrence in *Allen* that the city council intended to except from the requirements of the RLTO owners who live in the same building as the unit of the tenant seeking to invoke the protections afforded by the RLTO. Moreover, as the special concurrence stated in *Allen*, we believe that the city council may have based the owner-occupied exclusion on a belief that if an owner lived in the same building as the tenant(s), there was less likelihood that the building would be in a rundown condition, indicative of structural defects or the presence of vermin or other conditions which would

---

[3]In *Allen*, the tenant's townhouse was located at 1369 E. 55th Place in Chicago but the landlord's townhouse was located at 1365 E. 55th Place. *Allen*, 356 Ill. App. 3d at 406, 826 N.E.2d at 1065.

negatively impact the habitability of the dwelling units of the tenants. That being said, it is just as reasonable to assume that when the city council fashioned this exception, it also intended to exclude buildings that are appurtenant to owner-occupied buildings because there was less likelihood that those buildings would be rundown, structurally defective, infested with vermin, or in some other condition negatively affecting the livability of the tenants' dwelling units. Thus, plaintiff's argument is unavailing.

For the foregoing reasons, we find that the trial court properly determined that the exclusion in section 5—12—020(a) applied to plaintiff's rental unit in the coach house. Accordingly, we affirm the judgment of the circuit court of Cook County.

Affirmed.

KARNEZIS, P.J., and HOFFMAN, J., concur.